UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ROBERT SULLIVAN,
Plaintiff,

v. CIVIL ACTION NO. 16-11719-MLW

EXPERIAN INFORMATION SOLUTIONS, INC.,
RUSHMORE LOAN MANAGEMENT SERVICES, LLC,
SELENE FINANCE, LP,
And DOES 1 TO 10, INCLUSIVE,
Defendants.

REPORT AND RECOMMENDATION ON DEFENDANT, SELENE FINANCE, LP'S RENEWED MOTION FOR SUMMARY JUDGMENT (#113).

KELLEY, U.S.M.J

I. Introduction.

This is a consumer credit case. Robert Sullivan originally filed a complaint against Experian Information Services, Inc. (Experian), Rushmore Loan Management Services, LLC (Rushmore), and Selene Finance, LP (Selene), alleging violations of the Fair Credit Reporting Act (the FCRA), 15 U.S.C. § 1681 *et seq.*, Mass. Gen. L. c. 93 § 54, and the Fair Debt Collection Practices Act (the FDCPA), 15 U.S.C. § 1692 *et seq*. (#1 ¶ 1.)

Selene is the only defendant remaining in the case. Plaintiff alleges violations of the FCRA (Count I) and FDCPA (Count IV) against Selene. On November 2, 2017, Selene filed a motion for summary judgment (#45), along with a supporting memorandum (#46) and a statement of material facts. (#47.) Plaintiff opposed. (#82.) Oral argument was held on July 12, 2018. (#111.) On July 27, 2018, the Court entered an order, denying Selene's motion without prejudice. (#100.) The

Court noted in its order that plaintiff and Selene had agreed to attend mediation, and Selene could renew its motion if mediation was unsuccessful. *Id.*

On October 5, 2018, after the parties failed to mediate the case successfully, Selene filed a renewed motion for summary judgment, relying on the pleadings it had submitted in support of its original motion. (#113 at 1.) On October 19, 2018, plaintiff filed an opposition to Selene's renewed motion, relying on his previously filed opposition (#82) and the arguments he made at oral argument (#111), as well as a supplemental memorandum and declaration. (##114-115.)

For the reasons stated below, I RECOMMEND that defendant, Selene Finance, LP's renewed motion for summary judgment be DENIED in its entirety.

## II. The Facts.

The facts are undisputed except as indicated. Plaintiff alleges in his complaint that he purchased a residential property, located at 11 Mile Brook Road in West Bridgewater, Massachusetts, in 1983. (#1 ¶ 10; #115 ¶ 3.) In June 2004, he refinanced the loan on the property. (#1 ¶ 11; #115 at ¶ 5.)

Around March 2006, plaintiff was laid off from his job and fell behind on his monthly mortgage payments. (#115 ¶¶ 6–7.) In June 2006, in order to save his property from foreclosure, he filed a pro se application for Chapter 13 bankruptcy protection. *Id.* ¶ 8. Plaintiff later voluntarily dismissed his Chapter 13 bankruptcy petition and attempted to negotiate a loan modification with Washington Mutual, which was unsuccessful. *Id.* ¶¶ 9–10. Around March 2007, plaintiff filed for Chapter 7 bankruptcy and received a discharge on August 13, 2007. (#115 ¶¶ 12, 14; #47-3 at 2.) Because plaintiff did not sign a reaffirmation agreement on the mortgage/note on his property, his remaining debts were discharged in the bankruptcy. (#115 ¶¶ 13–14.) These debts included the mortgage on plaintiff's residence. *Id.* ¶ 14.

To keep his residence from being lost in foreclosure, plaintiff signed a Foreclosure Repayment Agreement (the FRA) with his mortgage holder, GMAC Mortgage, LLC (GMAC), on December 19, 2007. (#115 ¶ 15; #115-3 at 3–7.) The FRA indicated that plaintiff's mortgage on his property was currently in default for non-payment of an installment due on January 1, 2006. (#115-3 at 3 ¶ 2.) Per the FRA, GMAC would "suspend but not terminate" foreclosure, if it received an initial installment of $5,000.00 before December 20, 2007. *Id.* at 3 ¶ 5. Plaintiff would then pay the remainder of his default, $26,661.68, pursuant to an agreed-upon payment schedule. *Id.* at 4 ¶ 6. The FRA contained the following waiver: "This is an attempt to collect a debt, and any information obtained will be used for that purpose. If your debt has been discharged in bankruptcy, our rights are being exercised against the collateral for the above-referenced account, not as a personal liability." *Id.* at 5.

Plaintiff maintains that he made the initial payment of $5,000.00, as well as the payments agreed to pursuant to the payment schedule, on time every month in accordance with the FRA. (#1 ¶¶ 15–16; #115 ¶ 16.) Around July 2008, Select Profile Servicing, Inc. (SPS)[1] began servicing plaintiff's mortgage (#115 ¶ 17), and he received a fully-executed, permanent loan modification agreement from SPS around January 20, 2010. (#115 ¶ 24; #115-6 at 7–13.) Neither the FRA (#115-3) nor the loan modification agreement (#115-6) contained any specific provision regarding late fees.

[1] Several other entities had since replaced GMAC and SPS as the servicer or holder of plaintiff's mortgage. (#115 ¶¶ 17, 27, 30.) While plaintiff maintains that he made timely payments to each of these entities (#115 ¶¶ 28, 31) and includes multiple check copies and correspondence as exhibits (#115-5, #115-7, #115-9), much of the correspondence indicates that plaintiff had been late on various payments. Plaintiff admits that he refused to make a payment to SPS related to his loan modification in January 2010, alleging that he had already paid the required amount for the month. (#115 ¶¶ 25–26.) He further alleges that the third holder of his mortgage loan, Acqura Loan Services, "added extra fees and late payments to [his] account which caused him to fall behind even though [he] was never late." (#115 ¶ 29.)

Around August 20, 2014, plaintiff's mortgage loan was transferred to Selene. (#115 ¶ 32.) Plaintiff alleges in his complaint that, on January 11, 2016, Selene sent him a "Notice of Default and Intent to Accelerate[,]" notifying plaintiff that his mortgage was in default for failure to pay amounts he had already paid and demanding over $20,000.00 from plaintiff to cure the default. (#1 ¶ 77.) Plaintiff maintains he received a notice of intent to foreclose around August 10, 2016. *Id.* ¶ 78.

While plaintiff does not attach these documents to the record, he does include letters, dated November 11, 2014 and May 27, 2015, from Selene, advising him that was behind on his mortgage payments and to contact Selene to discuss the status of his mortgage. (#114-6 at 2–3; #115-10 at 10–11.) However, both letters included the following disclaimer, similar to the FRA: "Please note that if you are in bankruptcy or received a bankruptcy discharge of this debt, this communication is not an attempt to collect the debt against you personally." (#114-6 at 3; #115-10 at 11.) Both letters note that plaintiff had previously disputed when his payments were due. (#114-6 at 2; #115-10 at 10.)

Plaintiff also received several notices of delinquency from Selene, dated September 19, 2014, October 16, 2014, November 17, 2014, December 10, 2014, and January 14, 2015. (#114-5; #115-10 at 6, 9, 15, 17.) Each notice indicated that plaintiff's loan had been past due since 2014, assessed late penalties, and informed plaintiff that "[f]ailure to bring your loan current may result in fees and foreclosure – the loss of your home." (#114-5; #115-10 at 6, 9, 15, 17.) Plaintiff also received a letter, dated February 28, 2015, from Selene returning a check because his latest payment was either "less than the amount required to cure" his default, "was not certified funds, or was not the agreed upon amount." (#115-10 at 18.) Selene noted in the letter that it had been trying to reach

plaintiff in reference to the payment. *Id.* The letter did not include the same disclaimers as the November 11, 2014 and May 27, 2015 letters. *Id.*

On April 13, 2016, plaintiff obtained a copy of his credit report from Experian. (#115 ¶ 34; #115-11.) The Experian report indicated that Selene had reported his mortgage as late from December 2014 to January 2016. (#115 ¶ 37.) While the report indicated that plaintiff had a balance on his mortgage that was $20,121.00 past due as of April 2016 and that foreclosure proceedings had begun, it did not indicate that plaintiff's personal obligation on the mortgage had been discharged in the bankruptcy proceedings. (#115-11 at 6.) Plaintiff's credit report also alluded to the fact that he was individually responsible for the mortgage payments because the term "individual" was included directly under the section of the report labeled "responsibility." *Id.* at 10.

On May 12, 2016, plaintiff sent a letter to Experian, disputing the accuracy of Selene's reporting. (#115 ¶ 38; #115-12.) On June 7, 2016, Experian responded to plaintiff's letter, providing a copy of his current credit report, still indicating a past due balance and that foreclosure proceedings had begun, and alluding to the fact that plaintiff was personally responsible for the mortgage payments. (#115 ¶ 39; #115-13 at 10.) The disputed information was eventually deleted from plaintiff's credit report. (#114-2 at 33, ll. 12–15.)

In September 2018, plaintiff received a letter from Selene, acknowledging, "for informational purposes only[,]" that plaintiff had filed for bankruptcy and was not personally responsible for the debt on the mortgage. (#115 ¶ 40; #115-14 at 2.) The letter included the same disclaimer as the November 11, 2014 and May 27, 2015 letters. (#115-14 at 3.)

Selene's corporate representative, Jessica Edwards, testified as to the information Selene provided to Experian at a deposition on February 28, 2018. (#114-2.) Although Selene did not do

so in plaintiff's case, Edwards testified that once someone files for bankruptcy, Selene's general policy was to report that the account had been discharged in the bankruptcy. *Id.* at 32, ll. 7–12. While Edwards believed that Selene had declined to report the discharge of debt either because plaintiff had fallen behind on his loan modification payments or he was paying less than what he was required to under the terms of the modification, *id.* at 43, ll. 11–14; 79–80, ll. 20–16, she admitted that she was not entirely sure why Selene had not followed its general policy. *Id.* at 47, ll. 13–18. Edwards was also unsure why plaintiff's credit report alluded to plaintiff's being "individually" responsible for making the payments. *Id.* at 46, ll. 15–19. She further admitted that she had never seen a case like this one, where plaintiff had filed for bankruptcy, but then entered into a loan modification so he could stay in his home, and she did not inquire about the proper procedures for handling his account. *Id.* at 106, ll. 13–24.

III. Standard of Review.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). To prevail on a motion for summary judgment, the moving party bears the initial burden of averring the absence of a genuine issue of material fact and "support[ing] that assertion by affidavits, admissions, or other materials of evidentiary quality." *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir. 2003) (citations omitted). Once the moving party asserts the absence of a genuine issue of material fact, the non-movant must demonstrate the existence of a factual dispute with requisite sufficiency to proceed to trial. *Fontánez-Núñez v. Janssen Ortho LLC*, 447 F.3d 50, 54–55 (1st Cir. 2006). "[I]mprobable inferences, conclusory allegations, or rank speculation" cannot alone defeat summary judgment. *Ingram v. Brink's, Inc.*, 414 F.3d 222, 229 (1st Cir. 2005).

In determining whether summary judgment is proper, courts view the record in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in the non-movant's favor. *Caraballo-Caraballo v. Corr. Admin.*, 892 F.3d 53, 56 (1st Cir. 2018). Upon a party's motion, Rule 56 requires the entry of summary judgment where a party fails to establish the existence of any one essential element on which that party will bear the final burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (internal quotation marks omitted)).

## IV. Legal Argument.

### A. Fair Credit Reporting Act.

Plaintiff alleges in his complaint that Selene violated the FCRA because it provided inaccurate information to various credit reporting agencies regarding the past due balance on his mortgage, even though Selene was aware that plaintiff had disputed the information it was reporting. (#1 ¶¶ 87–88.) Specifically, plaintiff contends Selene violated 15 U.S.C. § 1681s-2(b) by failing to conduct a proper investigation of the information from his credit report he disputed to Experian. *Id.* ¶ 89.

Selene argues that the Court should grant summary judgment in its favor and dismiss plaintiff's FCRA claim because Selene reported accurate information about the note and mortgage to the credit bureaus. (#46 at 6 ¶ 18.) Selene maintains that, even though plaintiff's personal obligation on his mortgage loan had been extinguished in his bankruptcy, it could still legally report the status of the loan post-bankruptcy discharge. *Id.* at 8 ¶ 18 (citing *Lance v. PNC Bank, N.A.*, No. 15-10250-FDS, 2015 U.S. Dist. LEXIS 122676, at *3 (D. Mass. Sept. 15, 2015)).

Plaintiff disagrees, arguing that Selene's reporting to the credit bureaus that plaintiff owed a balance and was in the process of foreclosure, while omitting that that the account was discharged in the bankruptcy, violates the FCRA. (#114 at 9.) Without citing any case law, plaintiff also contends that, even if Selene could report plaintiff's mortgage debt, the account at issue "had aged off" after seven years "and should have been purged from [his] credit report in or around March 2014 at the latest." *Id.* at 15.

"The FCRA seeks to ensure 'fair and accurate credit reporting.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1545 (2016) (quoting 15 U.S.C. § 1681(a)(1)). Under the FCRA, "furnishers of information" like Selene have a duty "to provide accurate information" to CRAs like Experian. 15 U.S.C. § 1681s-2(a). Pursuant to 15 U.S.C. § 1681s-2(a), furnishers of information may not provide "any information relating to a consumer" to any CRA if the furnisher "knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A). "[T]he term 'reasonable cause to believe that the information is inaccurate' means having specific knowledge, other than solely allegations by the consumer, that would cause a reasonable person to have substantial doubts about the accuracy of the information." 15 U.S.C. § 1681s-2(a)(1)(D) (citations omitted).

Only federal agencies can enforce compliance with § 1681s-2(a). *Chiang v. Verizon New Eng., Inc.*, 595 F.3d 26, 35 (1st Cir. 2010). Therefore, a consumer will *not* have a private right of action for any alleged violation of § 1681s-2(a), even if the furnisher reported information that it knew or had reasonable cause to believe was inaccurate. *Id.* (emphasis added). However, a consumer may still assert a private cause of action pursuant to 15 U.S.C. § 1681s-2(b). *Id.*

Title 15 U.S.C. § 1681s-2(b) outlines a furnisher like Selene's "duties when a consumer disputes the completeness or accuracy of information in their credit report." *Id.* "When a

[consumer] disputes credit information to a CRA, the CRA must advise the furnisher of that data that a dispute exists and provide the furnisher with 'all relevant information regarding the dispute that the agency has received from the consumer.'" *Id.* at 35 (quoting 15 U.S.C. § 1681i(a)(2)(A)); *see Louis v. Bank of Am., N.A.*, No. 16-10859-MLW, 2016 U.S. Dist. LEXIS 185484, at **9–10 (D. Mass. Oct. 21, 2016) (granting defendants' motion to dismiss plaintiff's FCRA claim because the complaint did not allege that plaintiff disputed the inaccuracies concerning her credit). After being notified by a CRA, a furnisher of information is required to:

(1) "conduct an investigation with respect to the disputed information";

(2) "review all relevant information provided by the consumer reporting agency";

(3) "report the results of the investigation to the consumer reporting agency";

(4) "if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis"; and

(5) "if [a disputed item] is found to be incomplete or inaccurate or cannot be verified . . . , for purposes of reporting to a [CRA] only, as . . . based on the results of the reinvestigation . . . – (i) modify that item of information; (ii) delete [it]; or (iii) permanently block the reporting of that item of information."

*Chiang*, 595 F.3d at 35–36.

In order to prevail on a § 1681s-2(b) claim, the plaintiff must "show actual inaccuracies that a furnisher's objectively reasonable investigation would have been able to discover." *Id.* at 29–30; *see also DeAndrade v. Trans Union, LLC*, 523 F.3d 61, 66–67 (1st Cir. 2008)). "[T]he reasonableness of the investigation is to be determined by an objective standard[,]" and the plaintiff bears the burden of showing that the investigation was unreasonable. *Chiang*, 595 F. 3d at 37

(citing *Gorman v. Wolf & Abramson, LLP*, 584 F.3d 1147, 1156–57 (9th Cir. 2009)). Plaintiff must demonstrate "some causal relationship between" the furnisher's "allegedly unreasonable investigation and the failure to discover inaccuracies in his account." *Id.* "Mere incompleteness" of an investigation "is not enough" for a violation of § 1681s-2(b) to occur. *Id.* at 36. Rather, "the incompleteness must be such as to make the furnished information misleading in a material sense." *Id.* at 36–37 (quoting *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 148 (4th Cir. 2008) (furnisher may be liable under § 1681s-2(b) for failure to report information as disputed when the information is misleading in such a way and to such an extent that it can be expected to have an adverse effect) (internal quotation marks omitted)).

Without citing any of § 1681s-2(b)'s specific requirements, Selene spends a considerable amount of time arguing that its reporting of plaintiff's balance and foreclosure was "accurate."[2] While some courts have held that reporting like Selene's is still legally permissible because a debt still exists, others have found it be inherently misleading and thus, impermissible. *See, e.g.*, *Lance*, 2015 U.S. Dist. LEXIS 122676, at *9 ("single instance" of failing to update plaintiff's credit report "is not so objectively coercive as to warrant relief" under bankruptcy code); *Irby v. Fashion Bug (In re Irby)*, 337 B.R. 293, 295 (Bankr. N.D. Oh. 2005) ("[I]t is difficult to discern how . . . the

[2] Selene correctly points out that, while a chapter 7 bankruptcy discharge extinguishes the "personal liability of the debtor . . . , a creditor's right to foreclose on a mortgage survives or passes through the bankruptcy." *In re Zine*, 521 B.R. 31, 39 (Bankr. D. Mass. 2014) (*quoting Johnson v. Home State Bank*, 501 U.S. 78, 82–83 (1991)). "Thus, from a legal standpoint, the debt remains technically in existence, and may be enforced against the collateral by those creditors with security interests unaffected by bankruptcy." *Id.* Put differently, "[a]fter a chapter 7 discharge, the consumer is not personally liable for the loan, but he or she still owes the lender in the form of the property (the collateral)." *Lance v. PNC Bank, NA*, No. 15-10250-FDS, 2015 U.S. Dist. LEXIS 122676, at *7 (quoting *Germain v. Bank of Am., NA*, No. 13-cv-676-bbc, 2014 U.S. Dist. LEXIS 158874, at *5 (W.D. Wis. Nov. 7, 2014) (additional citations and quotation marks omitted)). The consumer must therefore "either make new arrangements with the lender to keep the property," as plaintiff attempted to do here, "return it to the lender[,] or wait for it to be foreclosed upon." *Id.* (quoting *Germain*, 2014 U.S. Dist. LEXIS 158874, at *5).

sole act of reporting a debt, whose existence was never extinguished by the bankruptcy discharge" violates the bankruptcy code. "All that is being reported is the truth."); *Vogt v. Dynamic Recovery Servs. (In re Vogt)*, 257 B.R. 65, 70 (Bankr. D. Colo. 2000) (court could not fault defendant for taking the position that "debt was still due and owing, notwithstanding the order of discharge in the [p]laintiff's bankruptcy case"). *But see In re Torres v. Chase Bank USA (In re Torres)*, 367 B.R. 478, 487–88 (Bankr. S.D.N.Y. 2007) ("a credit report that continues to show a discharged debt as outstanding, charged off, or past due is unquestionably inaccurate and misleading, because end users will construe it to mean that the lender still has the ability to enforce the debt personally against the debtor . . .") (internal quotation marks omitted).

Regardless whether Selene's reporting the outstanding debt and the foreclosure without disclosing the bankruptcy could be considered legally permissible, Selene fails to show that there are no disputes of material fact concerning its summary judgment motion. In order to prevail on a § 1681s-2(b) claim, a plaintiff must show "factual inaccurac[ies]" within a credit report "rather than the existence of disputed legal questions" within a credit report. *Chiang*, 595 F.3d at 38 (citing *DeAndrade*, 523 F.3d at 68). Furnishers like Selene are "neither qualified nor obligated to resolve matters that turn[] on questions that can only be resolved by a court of law." *Id.* (quoting *DeAndrade*, 523 F.3d at 68). Here, Edwards admitted that plaintiff's credit report alluded to his being individually responsible for making his loan payments (#114-2 at 44–45), although he had been discharged from being personally liable due to the bankruptcy. Therefore, a reasonable jury may conclude that plaintiff's credit report was sufficiently misleading to trigger the protections of § 1681s-2(b), notwithstanding whether Selene could permissibly report the outstanding debt and foreclosure without reporting the bankruptcy. *See Saunders*, 526 F.3d at 148 ("a credit report is

not accurate under the FCRA if it provides information in such a manner as to create a materially misleading impression").

Selene also fails to mention, let alone provide any evidence, whether it conducted any investigation with respect to the factual accuracy of the information plaintiff disputed to Experian, as required by § 1682s-2(b). Edwards' general lack of knowledge about plaintiff's account, as well as the proper procedures for reporting an account like plaintiff's, belies any claim that it did. *See Chiang*, 595 F.3d at 38 ("[t]he central inquiry when assessing a consumer's claim under § 1682s-2(b) is whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute") (internal citations and quotation marks omitted).

B. <u>Fair Debt Collection Practices Act</u>.

Selene argues that the FDCPA does not apply to either plaintiff or itself because plaintiff is not a consumer, and it is not a debt collector. (#46 at 9–10 ¶¶ 19–20.) Selene maintains plaintiff is not a consumer because consumers are obligated to pay their debts, and plaintiff's chapter 7 bankruptcy discharge eliminated plaintiff's personal obligation to pay the debt on his mortgage. *Id.* at 9 ¶ 19. Selene contends it is not a debt collector for a similar reason: plaintiff has no personal obligation to pay the debt on his mortgage to Selene. *Id.* at 9–10 ¶ 20. Plaintiff counters that he should be considered a "consumer" and Selene a "debt collector" pursuant to the FDCPA because Selene "consistently sent statements" to him, indicating that he owed a specific amount each month (#114 at 21) or that it was a "debt collector attempting to collect a debt." *Id.* at 22–23.

"The FDCPA is a landmark piece of consumer credit legislation designed to eliminate abusive, deceptive, and other unfair debt collection practices." *Arruda v. Sears*, 310 F.3d 13, 22 (1st Cir. 2002) (citing 15 U.S.C. § 1692)."Liability under the FDCPA . . . is predicated upon

improper conduct on the part of 'debt collectors' in collecting 'debts' owed or allegedly owed by 'consumers.'" *Hart v. GMAC Mortg. Corp. (In re Hart)*, 246 B.R. 709, 729 (Bankr. D. Mass. 2000) (citing 15 U.S.C. 1692(a)). "A viable claim for violation of the FDCPA requires that a plaintiff establish three elements": (1) defendants are debt collectors as defined by the FDCPA; (2) plaintiff "was the object of collection activity arising from consumer debt"; and (3) "defendants engaged in an act or omission prohibited by the FDCPA." *O'Connor v. Nantucket Bank*, 992 F. Supp. 2d 24 (D. Mass. 2014) (internal citations and quotation marks omitted).

Selene can be considered a "debt collector" under the FDCPA. Generally speaking, "[t]he term debt collector means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owned or due another." 15 U.S.C. § 1692a(6) (internal quotation marks omitted). "[T]he term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6). While Selene would not be considered a "debt collector" under these general provisions, the FDCPA itself "distinguishes debt collection from security interest enforcement in its definition of a debt collector." *Speleos v. BAC Home Loan Servicing, LP*, 824 F. Supp. 2d 226, 232 (D. Mass. 2011). "Section 1692a(6) . . . provides a general definition of a debt collector, but then adds that, under § 1692f(6), the term also includes an entity enforcing security interests" like Selene. *Id.* Therefore, Selene, as a mortgage servicer foreclosing on its security interest in plaintiff's residence, can be considered a debt collector under the provisions of § 1692f(6). *See Shaw v. Bank of Am., NA*, No. 10-cv-11021, 2015 U.S. Dist. LEXIS 4929, at *12 (D. Mass. Jan. 15, 2015) (citing *Warren v. Countrywide Home Loans, Inc.*, 342 F. App'x 458, 460 (11th Cir. 2009)).

Although Selene would ordinarily only be considered a "debt collector" for the purposes of a § 1692f(6) claim, and plaintiff could not ordinarily bring a claim under any other provision of the FDCPA, "[t]here is an important exception to this rule: a mortgage servicer is a debt collector under [each of the provisions of the] FDCPA if it begins servicing a loan that is already in default." *Id.* While plaintiff maintains that he made timely payments under the FRA and his subsequent loan modification, the record contains sufficient evidence from which a jury could conclude that plaintiff defaulted when making payments under the FRA and his subsequent loan modification to each of his previous loan servicers. Therefore, there is sufficient evidence for a jury to consider Selene a "debt collector" under each of the provisions of the FDCPA.

In addition to showing that Selene can be considered a "debt collector," plaintiff must prove that "any contention by [Selene] that [he] was obligated to pay money was the result of collection activity arising from a consumer debt." *Jones v. Revenue Assistance Corp.*, No. 14-10218-GAO, 2016 U.S. Dist. LEXIS 93946, at *7 (D. Mass. Apr. 13, 2016) (internal citations and quotation marks omitted). The FDCPA defines a "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to money arising out of a transaction . . . primarily for personal, family, or household purposes . . . ." 15 U.S.C. § 1692a(5). Contrary to Selene's arguments, the analysis does not turn on whether plaintiff is actually obligated to pay a debt owed. *Jones*, 2016 U.S. Dist. LEXIS 93946, at *7. Rather, "a plaintiff may bring a claim under the FDCPA by pleading that a debt collector falsely alleged an obligation to pay money." *Arruda*, 310 F.3d at 23; *see also Jones*, 2016 U.S. Dist. LEXIS 93946, at *7 (citations omitted). Therefore, plaintiff would be considered a consumer allegedly obligated to pay a debt if Selene's communications indicated

that he was, in fact, obligated to pay a debt, even though his personal obligation on the mortgage had been extinguished in the bankruptcy.

Plaintiff alleges that Selene violated the FDCPA by "collecting or attempting to collect a consumer debt without complying with the provisions of 15 U.S.C. § 1692b–j"; attempting "to collect a debt that was no longer owed or amounts in excess of what was owed"; and "unlawfully assess[ing] late fees and property preservation charges and threaten[ing] to take legal action that it could not take." (#1 ¶ 107(a–c).) It appears from the record that plaintiff is alleging violations of 15 U.S.C. §§ 1692c, 1692e, and 1692f.[3]

In evaluating whether communications violate the FDCPA, courts utilize "a least sophisticated consumer standard[.]" *Stagikas v. Saxon Mortg. Servs.*, No. 10-40164-TSH, 2013 U.S. Dist. LEXIS 136462, at **17 –18 (D. Mass. Sept. 24, 2013). This standard is an objective one, designed to protect "the gullible as well as the shrewd but preserves a quotient of reasonableness by preventing liability for bizarre or idiosyncratic interpretations of collection

[3] Title 15 U.S.C. § 1692b discusses the duties of "debt collector[s] communicating with any person other than the consumer . . . ." 15 U.S.C. § 1692b. Section 1692g concerns the validation of debts. 15 U.S.C. § 1692g. Section 1692h discusses a debt collector's responsibilities when the consumer owes multiple debts. 15 U.S.C. § 1692h. Section 1692i describes the legal actions debt collectors are permitted to take in connection with the collection of a debt. 15 U.S.C. § 1692i. Plaintiff has not discussed these specific statutes and has not detailed any conceivable way in which Selene could have violated these statutes in any part of the record.

Title 15 U.S.C. § 1692d provides, in pertinent part, that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt" and prohibits actions, including "[t]he use or threat of violence or other criminal means" to collect a debt, "[t]he use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader"; "[t]he publication of a list of consumers who allegedly refuse to pay debts"; "[t]he advertisement for sale of any debt to coerce payment of the debt"; "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number"; and placing "telephone calls without meaningful disclosure of the caller's identity." 15 U.S.C. § 1692d(1–6). Plaintiff has not alleged that Selene engaged in any of these acts in any part of the record.

notices." *Id.* at *18 (quoting *McDermott v. Marcus, Errico, Emmer & Brooks, PC*, 911 F. Supp. 2d 1, 54 (D. Mass. 2012) (additional internal citations and quotation marks omitted)). "[A]ny way it's viewed, the [least sophisticated consumer or debtor] standard is low." *In re Hart*, 246 B.R. at 730 (quoting *Avila v. Rubin*, 84 F. 3d 222, 226 (7th Cir. 1996)).

There are questions of fact as to plaintiff's claims under 15 U.S.C. §§ 1692c, 1692e, and 1692f. Title 15 U.S.C. § 1692c provides, in pertinent part, that "[i]f a consumer notifies a debt collector in writing that the consumer refuses to pay a debt . . . , the debt collector shall not communicate further with the consumer with respect to such debt, except" to inform "the consumer that the debt collector's future efforts are being terminated"; to inform "the consumer that the debt collector . . . may invoke specified remedies which are ordinarily invoked by such debt collector"; or "where applicable to notify the consumer that the debt collector . . . intends to invoke a specified remedy." 15 U.S.C. § 1692c(c)(1–3). Here, Selene acknowledged receipt of plaintiff's letters disputing his payment date (#114-6 at 2; #115-10 at 10), but continued to contact plaintiff, at times assessing late fees and returning payments. (#114-5; #115-10 at 6, 9, 15, 17, 18.) Selene also references additional attempts to contact plaintiff in reference to his payments, which may contain prohibited communications. (#115-10 at 18.)

Title 15 U.S.C. § 1692e provides, in pertinent part, that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The false representation of "the character, amount, or legal status of [the] debt" is considered a violation of the statute, as is "communicating . . . to any person credit information which is known or should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(2)(A), (8). Failing to disclose in a communication that one is a debt collector is also prohibited. 15 U.S.C. § 1692e(11).

Here, there is a genuine issue of material fact as to whether Selene's communications with Experian were sufficiently accurate to be permissible, and the record contains no indication that Selene reported plaintiff's disputed debt as such. Selene also sent at least one letter, on February 28, 2015, which failed to indicate that it was "debt collector attempting to collect a debt" or include the disclaimers that were found in some of its previous communications. (#115-10 at 18.) *See In re Hart*, 246 B.R. at 730 (collector violated § 1692e(2) by failing to indicate in letter to consumer that "it was attempting to collect a debt"); *McDermott*, 911 F. Supp. 2d at 73 (citing *Brady v. Credit Recovery Co., Inc.*, 160 F.3d 64, 67 (1st Cir. 1998) (section 1692e(8) requires a debt collector who knows or should know debt is disputed to disclose its disputed status to those inquiring about consumer's credit). *Cf. Shaw*, 2015 U.S. Dist. LEXIS 4929, at *15 (debt collector did not falsely allege an obligation to pay money when notice of sale clearly stated it was "intended for information purposes only and not an attempt to collect a debt" if the plaintiff had received a discharge in bankruptcy).

Title 15 U.S.C. § 1692f provides, in pertinent part, that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. "[T]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement created by the debt or permitted by law" is considered a violation of the statute. 15 U.S.C. § 1692f(1). A summary judgment record may support a finding that a defendant violated 15 U.S.C. § 1692f, even if the plaintiff fails to allege that the defendant violated any of the prohibitions specifically listed under the statute. *Stagikas*, 2013 U.S. Dist. LEXIS 136462, at **19–20.

There is sufficient evidence from which a reasonable jury could conclude that Selene violated 15 U.S.C. § 1692f, by not only assessing late fees that do not appear to be contemplated

by either the FRA or the loan modification agreement, but also reporting potentially inaccurate or misleading information to the credit bureaus, and failing to indicate its status as a debt collector in at least one communication to plaintiff. *See Stagikas*, 2013 U.S. Dist. LEXIS 136462, at **13, 21 (§ 1692f claim survived motion for summary judgment because plaintiff had "put forth facts showing [d]efendant made several misrepresentations, omissions, or misleading statements regarding . . . loan modification").

V. Conclusion.

For the reasons stated, I RECOMMEND that defendant, Selene Finance, LP's motion for summary judgment be DENIED in its entirety.

VI. Review by District Judge.

The parties are hereby advised that any party who objects to this recommendation must file a specific written objection thereto with the Clerk of this Court within 14 days of service of this Report and Recommendation. The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *U.S. v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *U.S. v. Vega*, 678 F.2d 376, 378–79 (1st Cir. 1982); *Park Manor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Page Kelley
Page Kelley
United States Magistrate Judge

July 2, 2019