```
              UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS
ROBERT SULLIVAN,                  )
     Plaintiff,                   )
                                  )
     v.                           )
                                  )
EXPERIAN INFORMATION              )   C.A. No. 16-11719-MLW
SOLUTIONS, INC., RUSHMORE         )
LOAN MANAGEMENT SERVICES,         )
LLC, SELENE FINANCE, LP, And      )
DOES 1 TO 10, INCLUSIVE,          )
     Defendants.                  )
```

## MEMORANDUM AND ORDER

WOLF, D.J.                                          October 16, 2020

### I. SUMMARY

Plaintiff Robert Sullivan filed his Complaint against Experian Information Services, Inc., Rushmore Loan Management Services, LLC, and Selene Finance, LP ("Selene"). See Complaint, Docket No. 1. Sullivan alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 et seq., Mass. Gen. L. c. 93 §54, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 et seq. See id. Selene is the only defendant remaining in this case. Plaintiff alleges violations of the FCRA (Count I) and FDCPA (Count IV) against Selene.

After discovery, Selene moved for summary judgment (the "Motion"). The Magistrate Judge issued a Report & Recommendation recommending that the Motion be denied.

The court has reviewed de novo the Report and Recommendation. See Fed. R. Civ. P. 72(b)(3). The court finds it to be thorough and persuasive. The court finds that triable issues of fact remain as to whether Selene violated both the FCRA (Count I) and the FDCPA (Count IV).

## II. THE SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A factual dispute, therefore, precludes summary judgment if it is "material" and "genuine." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A fact is "material" if, in light of the relevant substantive law, "it has the potential of determining the outcome of the litigation." Maymi v. P.R. Ports Auth., 515 F.3d 20, 25 (1st Cir. 2008). "Only disputes over facts that might affect the outcome of the suit under the governing law properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.

To determine if a factual dispute is "genuine," the court must assess whether "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Chadwick v.

2

WellPoint, Inc., 561 F.3d 38, 43 (1st Cir. 2009) (quoting Anderson, 477 U.S. at 248). In making this determination, the court must "constru[e] the record in the light most favorable to the non-moving party." Douglas v. York Cty., 433 F.3d 143, 149 (1st Cir. 2005). The record should not, however, be scrutinized piecemeal; rather, it must be "taken as a whole." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Kelly v. Cort Furniture, 717 F. Supp. 2d 120, 122 (D. Mass. 2010). Evidence submitted in inadmissible form may be considered only if it could be presented in a form that would be admissible at trial. See Fed. R. Civ. P. 56(c)(2); Gorski v. N.H. Dep't Corr., 290 F.3d 466, 475-76 (1st Cir. 2002).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). However, the moving party's burden "may be discharged by showing ... that there is an absence of evidence to support the nonmoving party's case." Id. at 325 (internal quotation marks omitted). Therefore, summary judgment is mandated "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

III. FACTS

The following facts are undisputed. In 1983, plaintiff purchased a residential property at 11 Mile Brook Road in West Bridgewater, Massachusetts.[1] He refinanced the mortgage loan on this property in 2004 with Washington Mutual. In about March 2006, he was laid off from his job and fell behind on monthly mortgage payments. He then applied for Chapter 13 bankruptcy protection, which he dismissed, and then unsuccessfully attempted to negotiate a loan modification with Washington Mutual.

Plaintiff subsequently filed for Chapter 7 bankruptcy. On August 13, 2007, his remaining debts were discharged in the bankruptcy. Those debts included the mortgage on his residence.

In order to ensure his residence was not lost in foreclosure, plaintiff signed a Foreclosure Repayment Agreement ("FRA") with his then-mortgage holder, GMAC Mortgage LLC ("GMAC"), which had evidently acquired the loan from Washington Mutual. The FRA indicated that his mortgage was in default for non-payment. Under the FRA, GMAC would "suspend but not terminate" foreclosure, if it received a payment of $5,000 before December 20, 2007, and if

---

[1] It is not clear who provided plaintiff's original mortgage loan.

4

plaintiff agreed to pay the remainder of his default on an agreed-upon schedule. Plaintiff maintains that he made this initial payment and continued making on-time payments.

Between November 2014 and May 2015, Selene sent plaintiff several letters advising plaintiff that he was delinquent on his mortgage, some of which assessed him late fees. After having been transferred to several other servicers and holders, plaintiff's loan was transferred to Selene by Rushmore Loan Management Services LLC in August 2014. Plaintiff alleges that Selene sent him a "Notice of Default and Intent to Accelerate" in January 2016, which stated that his mortgage was in default and demanded additional payments to cure the default. Selene subsequently sent him a notice of intent to foreclose in August 2016.

In April 2016, plaintiff received a copy of his credit report which indicated that Selene had reported his mortgage as late from December 2014 to January 2016. The report indicated plaintiff had a past due balance on his mortgage loan and that foreclosure proceedings had begun. However, it did not indicate that plaintiff's personal obligation on the loan had been discharged in bankruptcy.

Plaintiff disputed the accuracy of Selene's reporting in a May 2016 letter to Experian, a credit reporting agency. The disputed information was eventually deleted. However, a letter

from Experian indicated it was still on plaintiff's credit report in June 2016.

IV. PROCEDURAL BACKGROUND

The court referred this case to the Magistrate Judge for all pretrial purposes. Defendants initially moved for summary judgment on November 2, 2017. See Docket No. 45. On July 27, 2018, the Magistrate Judge denied this motion without prejudice following oral argument to allow the parties to go to mediation. See Docket No. 100. The mediation was unsuccessful. Selene, therefore, renewed its motion for summary judgment.

As indicated earlier, the Magistrate Judge issued a Report and Recommendation recommending that the court deny Selene's renewed motion for summary judgment (Docket No. 113) in its entirety. See Docket No. 126. On July 16, 2019, Selene timely filed an objection to this Report. See Docket No. 127. Plaintiff filed a reply. See Docket No. 128.

V. DISCUSSION

A. Fair Credit Reporting Act Claim (Count I)

Plaintiff's first claim is that Selene violated the FCRA by providing inaccurate information to credit reporting agencies concerning the balance due on plaintiff's mortgage, even though Selene had knowledge that plaintiff had disputed the contents of the reports. See Complaint at ¶¶87-88. The Magistrate Judge

recommended denying Selene's motion for summary judgment as to this count. See Rep. & Rec. at 7-11.

Selene argues that it could not have violated the FCRA because the information it furnished to CRAs was "accurate," and objects to the Magistrate Judge's finding that a dispute of material fact exists. See Objections at 2-3.

1. Legal Standard

The FCRA requires that "furnishers of information" such as Selene have a duty "to provide accurate information" to credit reporting agency ("CRA"), such as Experian. 15 U.S.C. § 1681s-2(a). In particular, 15 U.S.C. § 1681s-2(a) states that a furnisher of information may not provide "any information relating to a consumer" to a CRA if the furnisher "knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. §1681s-2(b) sets forth the obligations of furnishers, such as Selene, when a consumer disputes the accuracy or completeness of information in the consumer's credit report. See Chiang v. Verizon New Eng., Inc., 595 F.3d 26, 35 (1st Cir. 2010).

As the First Circuit wrote in Chiang, "[w]hen a [consumer] disputes credit information to a CRA, the CRA must advise the furnisher of that data that a dispute exists and provide the furnisher with 'all relevant information regarding the dispute that the agency has received from the consumer.'" Id. at 35 (quoting 15 U.S.C. § 1681i(a)(2)(A)). After a plaintiff notifies

the CRA of the inaccuracy, the CRA must advise the furnisher. When the CRA notifies the furnisher, the "furnisher must:

> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency;
>
> (C) report the results of the investigation to the consumer reporting agency;
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
>
> (E) if [a disputed item] is found to be incomplete or inaccurate or cannot be verified . . . , for purposes of reporting to a [CRA] only, as . . . based on the results of the reinvestigation . . . - (i) modify that item of information; (ii) delete [it]; or (iii) permanently block the reporting of that item of information."

Chiang, 595 F.3d at 35-36 (citing 15 U.S.C. §1681s-2(b)(1)). The First Circuit has recognized that consumers have a private right of action under §1681s-2(b) when a furnisher fails to conduct a reasonable investigation after a CRA has advised the furnisher that the consumer has disputed the reporting. See Chiang, 595 F.3d at 36. "Mere incompleteness" of an investigation, however, is not sufficient; to prevail on such a claim the plaintiff must first "show actual inaccuracies that a furnisher's objectively reasonable investigation would have been able to discover." See

8

Id. at 30, 37. Accordingly, the plaintiff must make a showing that the "disputed information was, in fact, inaccurate." Id. at 38 (quoting DeAndrade v. Trans Union LLC, 523 F.3d 61, 68 (1st Cir. 2008)). "Courts have held that a credit report is not accurate under FCRA if it provides information in such a manner as to create a materially misleading impression." Saunders v. Branch Banking and Tr. Co. Of VA, 526 F.3d 142, 148 (4th Cir. 2008).

2. Analysis

The Magistrate Judge recommended denying Selene's Motion for Summary Judgment because she found it did not demonstrate the absence of disputes of material fact regarding "whether plaintiff's credit report was sufficiently misleading to trigger the protections of § 1681s-2(b)," and because Selene does not assert that it conducted an investigation regarding the accuracy of the information plaintiff disputed to Experian. See Report & Recomm. at 11-12. The Magistrate Judge acknowledged that Selene's arguments in its motion for summary judgment memorandum focused on whether its reporting of the balance and foreclosure was accurate. However, as she explained, whether the reporting was legally permissible was not dispositive, as a plaintiff need only demonstrate that a credit report contained "factual inaccurac[ies]". See id. at 11 (quoting Chiang, 595 F. 3d. at 38). Since the credit report "alluded to [plaintiff] being individually responsible for making his loan payments," a jury could conclude

9

that this reporting was sufficiently misleading to trigger the protections of §1681s-2(b). See Rep. and Rec. at 11.

Selene now objects to the Magistrate Judge's recommendation by asserting that "Selene is within its rights to report a discharged debt to the credit bureaus where the Plaintiff has affirmatively and repeatedly sought to continue a credit relationship with Selene." Docket No. 127 at 2. Selene contends that the Magistrate improperly focused on the misleading nature of the reporting because, according to Selene, "the law is clear" that a creditor is allowed to continue reporting bankruptcy-discharged debt when a credit relationship is maintained. See id.

Selene's objection is not meritorious. This objection is a reiteration of an argument Selene made to the Magistrate Judge: that its reporting was accurate because it is legally permissible for a creditor to report a bankruptcy-discharged debt to the credit bureau when a credit relationship is maintained. See MSJ ¶¶17-18. However, as the Magistrate Judge correctly indicated, the issue of whether Selene was <u>allowed</u> to report the outstanding debt and foreclosure without reporting the bankruptcy is not the relevant inquiry under §1681s-2(b). A credit report that is misleading, even if "technically accurate," can qualify as not accurate under the FCRA. See Saunders, 526 F.3d at 148.

The Magistrate Judge noted that plaintiff's credit report did not indicate that plaintiff's personal obligation on the mortgage

10

had been discharged in bankruptcy, and included "individual" in the section of the report labeled "responsibility." See Rep. and Rec. at 5 (citing Docket No. 115-11 (Experian Credit Report)). Here, regardless of whether Selene was "allowed" to report the information regarding plaintiff's mortgage to CRAs in this way, the credit report could, in the view of a reasonable juror, be deemed misleading because it suggested that plaintiff was personally responsible for this loan. See Venugopal v. Digital Fed. Credit Union, 2013 U.S. Dist. LEXIS 43829, *9 ("[W]hile Defendant's reporting to Experian about the alleged debt may have been technically accurate, it still could have been misleading so as to materially alter the understanding of the debt.").

As it did in its motion for summary judgment, Selene relies heavily on Lance v.PNC Bank, N.A., No. 15-10250-FDS, 2015 WL 5437090, at *1 (D. Mass. Sept. 15, 2015). However, Lance did not present the issue of whether reporting of bankruptcy-discharged debt could serve as the basis of a §1681s2-(b) claim. See Chiang, 585 F.3d at 37. In fact, Lance did not involve obligations under the FCRA at all. Rather, in Lance, the court was only presented with the claim that the creditor's reporting of a balance owed to credit agencies violated the bankruptcy discharge injunction under

11 U.S.C. § 524.[2] See Lance, 2015 WL 5437090 at *2. That reporting of a discharged debt to CRAs may not constitute a violation of a bankruptcy discharge injunction does not mean that this information cannot constitute the basis of a §1681s2-(b) claim if reported in a misleading fashion.[3]

The Magistrate Judge also correctly recognized that a genuine dispute as to a material fact exists with regard to the reasonableness of Selene's investigation into the accuracy of its reporting once plaintiff had disputed this information. See Rep. & Rec. at 12. As the First Circuit has written, "the central inquiry when assessing a consumer's claim under § 1681s-2(b) is 'whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the

---

[2] The court found the plaintiff's claims under the Massachusetts Credit Reporting Act and Mass. Gen. L. c. 93A to be preempted by the FCRA. See id. at 4-5.

[3] A claim under §1681s2-(b) was unlikely to be successful in Lance due to significant factual difference between that case and the instant case. There, the CRA reported a past due balance and a foreclosure on the plaintiff's mortgage, which had been discharged in bankruptcy, without disclosing that the mortgage had been discharged. See id. at *1. However, once the plaintiff informed the furnisher that the mortgage was being improperly reported, the furnisher promptly corrected the reporting and instructed credit bureaus to report the loan as discharged. Lance, 2015 WL 5437090, at *1. Further, a consumer has no private right of action under §1681s2-(b) when, as in Lance, the consumer disputes information directly to a furnisher rather than to a CRA. See Chiang, 595 F.3d at 35.

description in the CRA's notice of dispute.'" Chiang, 595 F.3d at 38. Selene makes no argument about the reasonableness of its investigation and, indeed, provides no evidence of whether or how it conducted such an investigation. Drawing all reasonable inferences in plaintiff's favor, a fact finder could conclude that Selene failed to conduct a reasonable investigation. See id.

B. Fair Dept Collection Practices Act

Plaintiff's second claim is that Selene violated the FDCPA by attempting to collect on a debt that was no longer owed in violation of 15 U.S.C. §1692. See Complaint ¶¶106-107; Docket No. 114 at 20-23. The Magistrate Judge recommended denying Selene's motion for summary judgment as to this count. See Rep. & Rec. at 12-18.

Selene objects to the Magistrate Judge's conclusion that Selene was a "debt collector" as defined by the FDCPA.

1. Legal Standards

As the First Circuit has stated, "[t]he FDCPA is a landmark piece of consumer credit legislation designed to eliminate abusive, deceptive, and other unfair debt collection practices." Arruda v. Sears, 310 F.3d 13, 22 (1st Cir. 2002) (citing 15 U.S.C. §1692). Liability under the FDCPA is based on the "improper conduct on the part of 'debt collectors' in collecting 'debts' owed or allegedly owed by 'consumers.'" Hart v. GMAC Mortg. Corp. (In re Hart), 246 B.R. 709, 729 (Bankr. D. Mass. 2000). More specifically,

13

to establish a FDCPA claim, a plaintiff must establish three elements: "(1) that [plaintiff] was the object of collection activity arising from consumer debt; (2) defendants are debt collectors as defined by the FDCPA; and (3) defendants engaged in an act or omission prohibited by the FDCPA." O'Connor v. Nantucket Bank, 992 F. Supp. 2d 24 (D. Mass. 2014) (internal citations and quotation marks omitted).

2. Analysis

Selene moved for summary judgment with respect to the FDCPA claim (Count IV) on the basis that the FDCPA does not apply to either the plaintiff or itself because plaintiff does not qualify as a consumer and Selene does not qualify as a debt collector. See Mot. for Summary Judgment at 9-10. The Magistrate Judge determined that Selene qualifies as a "debt collector under the FDCPA." She relied in particular on Shaw v. BAC Home Loan Servicing, LP, in which the court concluded that "a mortgage servicer is a debt collector under each of the provisions of the FDCPA if it begins servicing a loan that is already in default." See Rep. & Rec. at 13 (citing 2015 U.S. Dist. LEXIS 4929, at *12 (D. Mass. Jan. 15, 2015)). This is an exception to the general rule that an entity enforcing security interests is not considered a "debt collector" under the general provisions of the FDCPA. See Speleos v. BAC Home Loans Servicing, L.P., 824 F. Supp. 2d 226, 232 (D. Mass. 2011).

Selene objects to this conclusion. It argues that the Magistrate Judge erred in finding that this exception is applicable, and that Selene cannot be considered a "debt collector" because it was only enforcing a security interest. Def. Obj. at 4-5.

Specifically, Selene relies on a paragraph in Shaw which states that:

> The analysis, however, does not stop there. The purpose of a "debt collector" is to collect a "debt," a term also defined by the FDCPA" and a "debt" is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction. . . . Here, pursuant to Shaw's Chapter 7 bankruptcy discharge, she is not liable for any deficiency between the price secured at foreclosure and the amount owed on the Mortgage" . . . . See Arruda v. Sears, Roebuck & Co. et al., 310 F.3d 13, 23 (1st Cir. 2002) (stating that "[t]he FDCPA's definition of a debt is broad, but it requires at least the existence or alleged existence of an obligation to pay money" and that it would "contradict the plain language" of the statute if a discharged debt satisfied the requirements of the FCDPA).

Shaw, 2015 U.S. Dist. LEXIS 4929, at *13.

The court understands Selene's argument to be that because plaintiff's personal liability on the mortgage had been discharged in bankruptcy, the exception recognized in Shaw does not apply here, and Selene therefore cannot be considered a debt collector under the FDCPA. However, the First Circuit held in Arruda that although the FDCPA "requires at least the existence or alleged

15

existence of an obligation to pay money," a plaintiff, nevertheless, "may bring a claim under the FDCPA by pleading that a debt collector falsely alleged an obligation to pay money." See Arruda, 310 F.3d at 23 (emphasis added).

Selene also claims that the reliance on the holding in Arruda that "a plaintiff may bring a claim under the FDCPA by pleading that a debt collector falsely alleged an obligation to pay money" is inapplicable because there is "no evidence whatsoever that Selene told the Plaintiff to pay money that he was not obligated to pay." See Def. Obj. at 6.[4] In particular, Selene claims that the Magistrate Judge "fails to cite any evidence or language that Selene, in any way, was communicating to the Plaintiff that he owed Selene a personal debt." Id. However, these assertions are not correct. The Magistrate Judge pointed to multiple pieces of evidence supporting a claim that Selene communicated with the plaintiff concerning the debt he owed. In particular, she

---

[4] In its Objections, Selene characterizes the Report and Recommendation as relying on Arruda to find that Selene was a "debt collector." However, the Magistrate Judge relied on the part of the Arruda judgment on which Selene focuses to find that plaintiff was a "consumer" under the FDCPA. Regardless of whether Selene intends its Objection to be directed towards the Magistrate Judge's conclusion concerning the definition of "debt collector" or "consumer", or both, it is not meritorious. The FDCPA defines a "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. §1692a(3) (emphasis added). As explained infra, a jury could find that Selene's communications falsely alleged that plaintiff owed Selene money.

16

referenced statements sent from Selene to Sullivan indicating amounts due on his loan. See Report & Rec. at 16 (citing Docket No. 114-6; Docket No. 115-10 at 6, 9, 10, 15, 17, 18).

Similarly, the court's conclusion in Shaw that the servicer in that case had not sought to collect a "debt" as defined by the FDCPA hinges on an important factual distinction. In Shaw, the basis of the plaintiff's FDCPA claim was the defendant's foreclosure on her property. Id. at *8. The notice of sale sent to the plaintiff stated that "if you are currently in bankruptcy or have received a discharge in bankruptcy as to this obligation, this notice is intended for information purposes only and is not an attempt to collect a debt." Id. at 15. This disclaimer, combined with the fact that the notice only indicated that the servicer intended to pursue the in rem remedy of foreclosure, would communicate that the servicer was not alleging that the consumer was personally liable for any amounts owed on the mortgage. The court in Shaw concluded that the bank was not attempting to collect a "debt" as defined by the FDCPA simply by foreclosing on plaintiff's property, and sending notices regarding foreclosure, after the mortgage had been discharged in bankruptcy. See id. at 15-16.

Here, by contrast, Selene sent various communications to plaintiff which asserted an "Amount Due", that plaintiff was delinquent on his mortgage loan, and that Selene "is a debt

17

collector attempting to collect a debt." <u>See</u>, <u>e.g.</u>, Docket No. 114-6; Docket No. 115-10 at 6, 8, 10, 15, 17, 18. While Selene may be able to convince a jury that, as it argues, this correspondence did not assert that plaintiff owed Selene the discharged debt as it occurred in the context of a voluntary loan modification agreement which plaintiff had requested, a dispute of material fact exists. <u>See</u> Docket No. 127 at 6. Notwithstanding the fact that plaintiff's personal liability was discharged in the bankruptcy, a jury could find such communications to "falsely allege[]" that plaintiff owed money to Selene. <u>See</u> <u>Arruda</u>, 310 F.3d at 23 (emphasis added). Therefore, the Magistrate Judge did not err in recommending that a genuine issue of fact remains as to whether Selene qualifies as a "debt collector" under each of the provisions of the FDCPA.

VI. ORDER

In view of the foregoing, it is hereby ORDERED that:

1. The attached Magistrate Judge's Report and Recommendation (Dkt. No. 126) is ADOPTED pursuant to 28 U.S.C. §636(b)(1).

2. The parties shall confer and, by November 6, 2020, report: (a) whether they have agreed to settle this case; if not, (b) whether they jointly request mediation by a Magistrate Judge; and, if not (c) whether they consent to trial by a Magistrate Judge.

3. If necessary, the court will schedule a pretrial conference and trial date.

/s/ Mark L. Wolf
UNITED STATES DISTRICT JUDGE